A

# CASE ASSIGNED TO: HONORABLE

# BRUCE D. ALBERTSON

FILED IN THE CLERK'S OFFICE
ROCKINGHAM COUNTY, VA

DEC 2 3 2020

_____ DEPUTY CLERK

**VIRGINIA:**

## IN THE CIRCUIT COURT OF ROCKINGHAM COUNTY

ASHLEY ADAMS,

       Plaintiff,

v.

       Case No. CL20-4622

ROCKINGHAM COUNTY
Department of Parks and Recreation
20 East Gay Street
Rockingham, Virginia 22802

       Defendant,

SERVE:
Thomas H. Miller, Esq., County Attorney
Rockingham County Administration Center
20 East Gay Street
Harrisonburg, Virginia 22802

---

### COMPLAINT

NOW COMES Plaintiff Ashley Adams, by and through undersigned counsel, and for her complaint against Defendant, Rockingham County, ("Defendant" or "Rockingham") alleges as follows:

### INTRODUCTION

1. Plaintiff Ashley Adams brings this action against Defendant pursuant to Title VII of the Civil Rights Act of 1964, 42, U.S.C. § 2000e et seq., as amended by the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 1981A ("Title VII"). Accordingly, it was unlawful for Defendant to discriminate against and harass Ms. Adams' because she was female and because she was pregnant or to retaliate against her for engaging in protected activity.

2. Ms. Adams brings this action against Defendant for damages arising out of gender discrimination pursuant to Title VII of the Civil Rights Act of 1964.

## PARTIES

3. At all times relevant to the Complaint, Plaintiff has been and is a resident of Virginia.

4. From December 2014 to November 2, 2017, Plaintiff Ashley Adams was an employee of Defendant Rockingham County.

5. Defendant Rockingham County conducts business operations from its Harrisonburg-based Administrative Office Building located at 20 East Gay Street, Harrisonburg, Virginia 22802.

## JURISDICTION

A. Subject Matter Jurisdiction

6. The court has jurisdiction over the claims in this action pursuant to Va. Code Ann. § 17.1-513, because the subject matter of Plaintiffs claims is premised on civil claims.

B. Personal Jurisdiction

7. This Court may properly maintain personal jurisdiction over Defendant because Defendant conducts business within this state and judicial district.

## VENUE

8. Venue is proper in this Court pursuant to Virginia Code Ann§ 8.01-262 because the Defendant's principal place of business is located within this judicial district.

## ADMINISTRATIVE PROCESS

9. Prior to instituting this action, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on March 12, 2018. See Exhibit A.

10. On or about July 23, 2019, the EEOC issued a cause finding specifying that there is reasonable cause to believe that Title VII of the Civil Rights Act of 1964, as amended, has been violated. See Exhibit B.

11. On September 29, 2020, the EEOC issued a Notice of Right to Sue and Conciliation Failure. See Exhibit C.

12. Ms. Adams' suit is timely filed with this Court.

### FACTUAL BACKGROUND

13. Ashley Adams began her employment with Rockingham County as Economic Development and Tourism Coordinator in December 2014. She began work as an intern when she was a senior at James Madison University. After four weeks Defendant hired her full time.

14. Ms. Adams' direct supervisor was Ashton Rawley, whose peer supervisor, Bart Bridges, worked in the same office with Ms. Rawley and Ms. Adams. Her second-line supervisor was Kathy McQuain, Ms. McQuain held the position of Director of Parks and Recreation and was a close family friend of Mr. Bridges. Rockingham County's Human Resources representative to the office, Jennifer Mongold, was also a friend of Mr. Bridges.

15. From Ms. Adams' first weeks on the job, she received warnings from female coworkers that she should watch out because Bart Bridges was "handsy." Various staff, including those interviewed by Defendant's investigator[1], Kate Fitzgerald, told Ms. Adams about what she later observed herself and eventually experienced: Mr. Bridges regularly rubbed the necks and shoulders of interns and subordinate staff without invitation. Mr. Bridges

---

[1] After Ms. Adams contacted Rockingham's Board of Supervisors raising her allegations of sexual harassment and hostile work environment on November 2, 2017, Rockingham initiated an investigation into Ms. Adams' claims and subsequently retained Ms. Fitzgerald to conduct an independent investigation.

soon began giving "massages" to Ms. Adams, at which time he whispered messages into her ear such as "you smell good." Mr. Bridges also engaged in inappropriate "locker room" talk throughout the office concerning his opinions about the bodies or appearance of female employees, sexual photos from the internet, and his own sex life. Ms. Adams was uncomfortable hearing this talk, especially because Mr. Bridges expected Ms. Adams and the other staff to engage him and laugh about topics that were inappropriate and unacceptable. However, because Ms. McQuain was usually present and engaged Mr. Bridges when he made these comments, Ms. Adams knew that reporting his comments to Ms. McQuain would not have any effect.

16. In the fall of 2016, intern Michael Dawson reported to Ms. Adams through a series of text messages that the previous summer, Mr. Bridges had made him uncomfortable by touching his neck and shoulders without invitation, and regularly made inappropriate comments about other workers in the office. Mr. Dawson also reported to Ms. Adams that when Mr. Bridges saw a photo of Mr. Dawson's younger sister, he (Mr. Bridges) started texting Mr. Dawson questions and comments about his sister, including asking him "when she will be of age." Concerned, and knowing based on Mr. Bridges reputation and her own experience that Mr. Dawson's report was true, Ms. Adams reported Mr. Dawson's text messages to Ms. McQuain.

17. As a result of Ms. Adams' report to Ms. McQuain, Ms. McQuain alerted County Administrator Stephen King, who called a meeting with Ms. Adams, Ms. McQuain, and Ms. Mongold. At the meeting, Mr. King instructed Ms. Adams not to talk about Mr. Dawson's claims or text messages. He then instructed Ms. Adams to leave the meeting while the remaining individuals continued to meet.

18. After the meeting with Mr. King, Mr. Bridges stopped making inappropriate jokes and comments for about a week before resuming his usual course of conduct of making inappropriate comments and engaging in unwanted touching.

19. In November 2016, Ms. Adams became pregnant. After Ms. Adams announced her pregnancy in the office, Mr. Bridges resumed making inappropriate sexual and/or pregnancy-related comments. For example, he "joked" that the baby "might be [his]," suggesting that he and Ms. Adams had engaged in a sexual relationship.

20. Mr. Bridges also suggested on multiple occasions that the baby had been fathered by one or another of Ms. Adams' coworkers, including but not limited to, Howard Taylor and Dontae Gholson, "joking" that "the baby might come out half black." Mr. Bridges' inappropriate comments were distressing for Ms. Adams and her fiancé as well as her coworkers, who sympathized with her in private. However, because Ms. McQuain (Mr. Bridges' supervisor) was frequently present when Mr. Bridges made his comments and because she laughed at and seemed to enjoy his "jokes," thus encouraging Mr. Bridges' illegal actions, Ms. Adams reasonably believed that reporting his conduct would not change anything besides putting her at risk of retaliation.

21. Both Mr. Bridges and Ms. McQuain made "jokes" about Ms. Adams not returning to work after her maternity leave, suggesting they both expected this outcome. Ms. Adams was shocked at management's reaction to her impending parenthood, particularly because when her male coworker, Jerry West, took paternity leave in June 2015, no one, including Mr. Bridges, made any similar comments about him.

22. In April 2017, when Ms. Adams' direct supervisor, Ms. Rawley, returned from maternity leave for a few weeks before resigning to stay home with her newborn twins, these

comments directed at Ms. Adams by Mr. Bridges and Ms. McQuain intensified. In May 2017, Mr. Bridges made another comment about Ms. Adams becoming a stay-at-home mom during an interaction involving several other male coworkers. Even though she immediately told Mr. Bridges his comment was inappropriate, Mr. Bridges and the other men just laughed at her and told her she was being "hormonal" because she was pregnant.

23. Later in May 2017, Ms. McQuain promoted Mr. Bridges to the position of Parks and Recreation Manager. Ms. Adams became concerned about his growing influence in the department in light of his ongoing harassing comments and Rockingham's clear indifference to his actions. Accordingly, Ms. Adams set up a meeting with Human Resources Director Jennifer Mongold and reported her concerns that Mr. Bridges and Ms. McQuain frequently made inappropriate comments about her pregnancy and/or about her not returning from maternity leave despite her having informed them she intended to return to work. These comments include, but are not limited to an instance when, during their monthly staff meeting, Ms. Adams was preparing to give her report when Mr. Bridges yelled out, "No, next, skip Ashley. We all know she is not coming back." Ms. Adams was upset and explained that she wanted the opportunity to give her report, as everyone else had been allowed to do. Mr. Bridges replied, "there are the pregnancy hormones."

24. Ms. Adams also reported her concern that Ms. McQuain had told Jerry West, her coworker, that management was planning to fill Ms. Rawley's position with an internal candidate without sharing this information with anyone else in the department. Ms. Adams informed Ms. Mongold that Mr. West had fewer duties and less responsibility than she did[2], yet Ms.

---

[2] Mr. West, who is Ms. McQuain's cousin, submitted less than twelve programs each season and oversaw one, while Ms. Adams submitted, created and/or oversaw over 100 programs each season.

McQuain was treating him more favorably because Ms. Adams was pregnant and would be taking maternity leave. Ms. Mongold simply stated she would take Ms. Adams' report under advisement.

25. The day after Ms. Adams reported Ms. McQuain's preferential treatment of Mr. West to Human Resources, Ms. McQuain she texted Ms. Adams in all-caps and instructed her, "I NEED TO SEE YOU IN MY OFFICE AFTER MY MEETING." In a face-to-face meeting later that day, Ms. McQuain berated Ms. Adams for "running to HR" about her "issues."

26. The following day, Ms. Adams informed Rockingham County Administrator, Stephen King, about Ms. Mongold's favoritism and Ms. McQuain's retaliatory conduct. Mr. King spoke informally with Ms. Mongold but not with Ms. McQuain. Mr. King did not impose discipline on either Ms. Mongold or Ms. McQuain for retaliating against Ms. Adams after she reported nepotism. Ms. Mongold and Ms. McQuain's retaliatory response to Ms. Adams' report, which included Ms. McQuain's comment that Ms. Adams "can run and cry to the County Administrator again if you want," had a chilling effect on Ms. Adams and made her fearful to report Mr. Bridges' ongoing harassment, particularly because he was a close family friend of both Ms. Mongold and Ms. McQuain and who regularly socialized with them.

27. In late April or early May, shortly before Ms. Rawley's last day with Rockingham County, Ms. Rawley's position of Recreation Programs Supervisor officially opened to applicants. Ms. Adams submitted an application, along with two other internal candidates and three external ones. The day after Ms. Adams applied, Ms. Rawley told Ms. Adams in person that she had spoken with Ms. McQuain and that Ms. McQuain did not want to hire Ms. Adams to the position. Ms. Rawley said Ms. McQuain specifically stated, "Ashley won't

be any good to me since she's going on maternity leave." Ms. Rawley was offended by Ms. McQuain's stance since at that time Ms. Rawley had recently returned from maternity leave herself.

28. Ms. Mongold interviewed Ms. Adams for the position only after she had interviewed all the other candidates, all male. Ms. Adams' interview was the only one Ms. McQuain did not attend, although Ms. McQuain was, in fact, in the office that day. When Ms. Adams raised this issue, Ms. Mongold stated Ms. McQuain could not attend because she had meetings that day. Ms. Adams requested a second interview with Ms. McQuain present so that all the interviews would be conducted under the same circumstances. Although Ms. Mongold refused this request, Ms. McQuain invited Ms. Adams to a one-on-one interview using Ms. Mongold's interview notes. During this interview, Ms. McQuain asked Ms. Adams several questions specific to her pregnancy such as, "Do you know how hard it is to return to work after having a baby?" and "Do you think you can come back to work after having a baby?" Later that week, Ms. McQuain stated to Ms. Adams that she "thought long and hard and came to a decision over the weekend," essentially admitting that her one-on-one interview with Ms. Adams was purely pro forma and nothing more than an attempt to give the illusion of having treated Ms. Adams' candidacy with the same gravity as the two male, non-pregnant internal candidates she interviewed.

29. By the summer, Ms. Adams' pregnancy was visible, and in addition to the inappropriate comments, Mr. Bridges repeatedly touched Ms. Adams despite her requests that he not touch her. In front of witnesses, he rubbed Ms. Adams' belly and placed his hands on her hips. Although Ms. Adams loudly stated, "stop touching me please," Mr. Bridges simply switched to rubbing her shoulders and telling her she "need[s] to relax."

30. Mr. Bridges also made egregiously sexist, objectifying comments about Ms. Adams. For example, he "joked" that Ms. Adams should be a stripper "on amateur night at Paradise City on Thursdays" – a strip club in West Virginia – so that she could afford to be a stay-at-home mother after she gave birth.   He also repeatedly told her, "I know you have the moves (to be a stripper)" while winking at Ms. Adams.

31. Mr. Bridges repeatedly asked Ms. Adams if she and her fiancé, DJ, still had sex "even though you're pregnant" and whether DJ "pokes the baby in the eye." After making these disgusting comments, Mr. Bridges openly discussed his sexual relations with his wife when she was pregnant.

32. Ms. Adams showed one of her coworkers an ultrasound and Mr. Bridges looked at it and began referencing her unborn baby as "my gummy bear" and would send Ms. Adams text messages asking how "[his] gummy bear is doing?"  One ultrasound picture showed Ms. Adams' unborn child with her legs over her head and Mr. Bridges stated, "that's how the baby was made too."

33. Mr. Bridges also commented to Ms. Adams, with coworker Dontae Gohlson present, that he was "happy his wife tore" during the birth of one of their children because this "made the doctor stitch her up tighter," and said that Ms. Adams' fiancé "should hope you tear too." Afterward, Mr. Gohlson approached Ms. Adams to tell her how shocked he was by Mr. Bridges' highly inappropriate comments.

34. Throughout the last few months of Ms. Adams' pregnancy, Mr. Bridges often approached Ms. Adams, squatting down into a baseball catchers position, placing his hands at the back of Ms. Adams' thighs and say, "if you are lubed up and cough, I am ready to catch the baby", "push", or "lube up."

35. Due to the ongoing stress, anxiety and humiliation she endured, Ms. Adams was forced to begin her maternity leave earlier than she planned, thus reducing the FMLA time she would have to spend caring for her newborn after the baby's birth. Ms. Adams underwent numerous stress tests while pregnant, as stress has been medically proven to delay labor, and was two weeks past her due date when she had a Caesarian delivery of her newborn child.

36. On September 14, 2017, Ms. Adams returned to her Coordinator job. She requested and received permission from Ms. McQuain to take breaks once or twice per day to express breast milk – a practice Ms. McQuain later stated during investigation that Ms. Adams was "adamant" about., Ms. McQuain reluctantly approved Ms. Adams' breaks despite the fact that the Pregnancy Discrimination Act and the Patient Protection and Affordable Care Act specifically require employers as large as Rockingham County to provide nursing mothers private space and reasonable break time for expressing breast milk.

37. On multiple occasions between September and November 2017, when Ms. Adams closed her office door to express milk (with a sign on the door notifying coworkers of same), Mr. Bridges jiggled the door handle and call out inappropriate comments such as, "hey, you got my milk in there? I have cookies." The sign provided by Defendant was a laminated picture of a cow. When Ms. Adams went to the staff kitchen space to refrigerate her milk, Mr. Bridges made inappropriate comments about her breast size before and after pumping, including pointing at her breasts and saying, "that's all those things made?" and also comments about drinking her breast milk. Mr. Bridge's extreme harassment led Ms. Adams to avoid pumping at work, suffering discomfort until she could get home. Mr. Bridges' misconduct had a direct and negative impact on her milk supply and her ability to breastfeed her baby.

38. In October 2017, Ms. Adams and several other coworkers were working at their desks when Mr. Bridges came into the workspace and announced he would help one of Ms. Adams' female coworkers (Regina Phillips), who was single, "find a boyfriend." He immediately took over Ms. Phillip's workstation and logged onto the personals section of Craigslist.com, where he began clicking through ads with pornographic images while calling attention to the screen. Although Ms. Adams was extremely uncomfortable in the situation and observed that her coworkers felt the same based on their facial expressions, she also saw that Ms. McQuain was present in the room and was encouraging Mr. Bridges, laughing along with him when he made his inappropriate "jokes."

39. Based on her experience, she knew and was fearful that reporting Mr. Bridges' behavior to Ms. McQuain not only put her at risk of retaliation but also that reporting his conduct would change nothing, as Ms. McQuain not only witnessed and countenanced his misconduct, but actively encouraged it.

40. On November 2, 2017, Ms. Adams sent an email to Rockingham County supervisors, and County Administrator Stephen King, describing Mr. Bridges' harassment as the basis for her constructive discharge from Rockingham County.

41. In early November 2017, after Ms. Adams submitted an email detailing the harassment she had been experiencing and an explanation of how it had forced her out of her job, Rockingham County initiated an internal investigation. On several occasions, Rockingham County pressured Ms. Adams to participate in the investigation, going so far as to have Jennifer Mongold call Ms. Adams directly and request that she physically go to Rockingham County offices to be interviewed even after Ms. Adams' counsel had communicated to Rockingham County that Ms. Adams was represented by counsel.

42. In light of Ms. Adams' adversarial stance toward Rockingham County and separation from employment with Rockingham County, she did not participate in the investigation.

43. Despite Ms. Adams' non-participation, the investigator, Kate Fitzgerald, concluded based on the evidence supplied by Ms. Adams' coworkers that Bart Bridges and Kathy McQuain had engaged in egregious misconduct.

## CAUSES OF ACTION

## COUNT I

## PREGNANCY DISCRIMINATION IN VIOLATION OF TITLE VII AND THE PREGNANCY DISCRIMINATION ACT

44. Plaintiff re-alleges and incorporates all allegations of this Complaint as if fully set forth herein.

45. In Violation of Title VII, as amended by the Pregnancy Discrimination Act, Defendant discriminated against and harassed Ms. Adams after learning she was pregnant.

46. Rockingham County treated Jerry West, a male, better than Ms. Adams, when he went on paternity leave in June 2015 without receiving any inappropriate comments.

47. Defendant Rockingham County acted with malice and reckless indifference to Ms. Adams' rights under Title VII and the Pregnancy Discrimination Act when it discriminated against her, harassed her, and denied her a fair opportunity for career advancement.

48. As a direct and proximate result of Defendant's conduct, Ms. Adams has suffered damages in the form of lost earnings, benefits, and/or out-of-pocket expenses. As a further direct and proximate result of Defendants' conduct, Ms. Adams will suffer additional damages in the form of lost future earnings, benefits, and/or other prospective damages.

49. As a further direct and proximate result of Defendant's conduct, Ms. Adams has suffered mental and emotional pain, distress, and discomfort.

50. In engaging in the conduct alleged herein, Defendant acted maliciously and/or outrageously toward Plaintiff, with conscious disregard for her known rights and with the intention of cause, and/or willfully disregarding the probability of cause, unjust and cruel hardship to Plaintiff. In so acting, Defendant deliberately and intentionally injured Ms. Adams.

51. Finally, Plaintiff is entitled to costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 2000e-5(k).

## COUNT II

## SEX DISCRIMINATION IN VIOLATION OF TITLE VII

52. Plaintiff re-alleges and incorporates all allegations of this Complaint as if fully set forth herein.

53. In violation of Title VII, Defendant discriminated against Plaintiff on the basis of her sex, by failing to prevent Mr. Bridges from touching Ms. Adams and making inappropriate comments to and about Ms. Adams.

54. Rockingham County treated Jerry West and Howard Taylor, both male and not pregnant, better than Ms. Adams, allowing them a fair opportunity to interview and be considered for a career advancement.

55. Rockingham did not subject its male employees who took paternity leave to any abuse or hostile work environment.

56. In taking the above-described discriminatory actions, Defendant acted with malice and reckless indifference to Ms. Adam's rights under Title VII.

57. As a direct and proximate result of Defendant's conduct, Ms. Adams has suffered damages in the form of lost earnings, benefits, and/or out-of-pocket expenses. As a further direct

and proximate result of Defendants' conduct, Ms. Adams will suffer additional damages in the form of lost future earnings, benefits, and/or other prospective damages.

58. As a further direct and proximate result of Defendant's conduct, Ms. Adams has suffered mental and emotional pain, distress, and discomfort.

59. In engaging in the conduct alleged herein, Defendants acted maliciously and/or outrageously toward Plaintiff, with conscious disregard for her known rights and with the intention of cause, and/or willfully disregarding the probability of cause, unjust and cruel hardship to Plaintiff. In so acting, Defendants deliberately and intentionally injured Ms. Adams..

60. Finally, Plaintiff is entitled to costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 2000e-5(k).

## COUNT III
## RETALIATION IN VIOLATION OF TITLE VII

61. Plaintiff re-alleges and incorporates all allegations of this Complaint as if fully set forth herein.

62. Ms. Adams repeatedly reported the abusive and illegal conduct to her supervisors. Her supervisors also repeatedly witnessed the abusive and illegal conduct.

63. In violation of Title VII, Defendant retaliated against Ms. Adams for engaging in protected activity by denying her the opportunity for career advancement and by continuing to subject her to more abuse and harassment and by failing to correct the illegal actions of its employees and subjecting Ms. Adams to an intolerable work environment.

64. There is a clear nexus between Ms. Adams' reports of illegal harassment and Rockingham's actions and inactions.

65. As a direct and proximate result of Defendant's conduct, Ms. Adams has suffered damages in the form of lost earnings, benefits, and/or out-of-pocket expenses. As a further direct and proximate result of Defendant's conduct, Ms. Adams will suffer additional damages in the form of lost future earnings, benefits, and/or other prospective damages.

66. As a further direct and proximate result of Defendant's conduct, Ms. Adams has suffered mental and emotional pain, distress, and discomfort.

67. In engaging in the conduct alleged herein, Defendants acted maliciously and/or outrageously toward Plaintiff, with conscious disregard for her known rights and with the intention of cause, and/or willfully disregarding the probability of cause, unjust and cruel hardship to Plaintiff. In so acting, Defendants deliberately and intentionally injured Ms. Adams..

68. Finally, Plaintiff is entitled to costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 2000e-5(k).

## COUNT IV

## HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII

69. Plaintiff re-alleges and incorporates all allegations of this Complaint as if fully set forth herein.

70. In violation of Title VII, Defendant knowingly created and maintained a hostile work environment directed at Ms. Adams on the basis of her gender and her pregnancy and in retaliation for reporting harassment and objecting to it.

71. As alleged, above, the conduct of Mr. Bridges, Ms. McQuain and other Rockingham employees was unwelcome to Ms. Adams and despite her requests that the conduct cease, these individuals continued to subject her to abuse and harassment.

72. As alleged, above, the hostile work environment created and maintained by Rockingham was severe and pervasive and effectively altered the conditions of Ms. Adams' employment.

73. As the direct and proximate result of Rockingham's illegal actions, Ms. Adams has suffered severe emotional distress, pain and suffering.

### COUNT V – CONSTRUCTIVE DISCHARGE

74. Plaintiff re-alleges alleges and incorporates all allegations of this Complaint as if fully set forth herein.

75. As described, above, Rockingham engaged in a pattern and practice of subjecting Ms. Adams a severe hostile work environment, the result of which was to fundamentally alter the terms and conditions of her employment.

76. As the direct and proximate result of Defendant's actions, Defendant subjected Ms. Adams to an intolerable working environment to such a degree that it effectively terminated her employment on or about November 2, 2017 when she "resigned" her position with Rockingham.

77. Rockingham was aware of the intolerable conditions to which it subjected Ms. Adams but was grossly indifferent to its actions or the effects its actions had on Ms. Adams.

78. As the direct result of this constructive termination, Ms. Adams has suffered lost wages.

### JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Ashley Adams, respectfully requests that this Honorable Court enter judgment in her favor on all Counts of her Complaint and against Defendant, Rockingham County, and that she be awarded the following relief:

a.  Back pay in an amount to be determined;

b.  Front pay in an amount to be determined;

c.  Compensatory damages for her emotional distress, pain and suffering, in an amount to be determined, but no less than $200,000.

d.  Medical and other costs incurred as a result of Defendant's action;

e.  Reasonable attorneys' fees and court cost associated with this suit;

f.  Award of prejudgment interest, costs, and disbursement, as appropriate herein; and

g.  Such other, further relief as this Court and jury deems just or appropriate.


Dated: December 22, 2020

Respectfully Submitted,

*/s/ Joanne Dekker*
Joanne Dekker
Virginia State Bar No. 29941
The Spiggle Law Firm, PLLC
4830A 31st St., S., Suite A
Arlington, Virginia 22206
(202) 449-8527 (main number)
(703) 215-1123, ext. 1 (direct dial)
(202) 517-9179 (fax)
jdekker@spigglelaw.com
*Counsel for Plaintiff, Ashley Adams*

# EXHIBIT A

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented to: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other Information before completing this form. | ___ FEPA<br>_X_ EEOC | 438-2017-00066 |

_____ and EEOC
State or local Agency, if any

| Name (indicate Mr. Ms. Mrs.)<br>Ms. Ashley Adams | Home Phone (Incl. Area Code)<br>(978)-476-1993 | Date of Birth<br>04/25/1992 |
|---|---|---|

Street Address       City, State and ZIP Code
2332 Breckenridge Ct.    Harrisonburg, VA 22801

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name<br>Rockingham County (VA) | No. Employees, Members<br>50+ | Phone No. (Include Area Code)<br>(540)-564-3000 |
|---|---|---|

Street Address       City, State and ZIP Code
20 East Gay St.    Harrisonburg, VA 22802

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|

Street Address       City, State and ZIP Code

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| __ RACE   __ COLOR   _X_ SEX   __ RELIGION   __ NATIONAL ORIGIN<br><br>_X_ RETALIATION   __ AGE   __ DISABILITY   _X_ OTHER (Specify below.) | Earliest          Latest<br>05-01-2017    November 2017<br><br>__ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attached extra sheet(s)):

Sex & Pregnancy Discrimination.

Sexual Harassment (Since December 2014)

Please, see attached document for further details.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>03-12-2018<br>_____   _____<br>Date          Charging Party Signature | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLANANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) March, 12, 2018 |

# EXHIBIT B



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Richmond Local Office**

400 N. 8ᵗʰ Street, Suite 350
Richmond, VA 23219
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
Richmond Status Line: (866) 408-8075
Direct Dial: (804) 771-2200
TTY (804) 771-2227
FAX (804) 771-2224
Website: www.eeoc.gov

Charge Number: <u>438-2018-00066</u>

Ashley Adams
2332 Breckenridge Court
Harrisonburg, Virginia 22801

Charging Party

Rockingham County
Department of Parks and Recreation
20 East Gay Street
Rockingham, Virginia 22802

Respondent

## DETERMINATION

Under the authority vested in me by the Commission, I issue the following determination on the merits of this charge. Respondent is an employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, <u>et seq.</u> ("Title VII"), and timeliness, deferral, and all other requirements for coverage have been met.

Charging Party alleges Respondent subjected her to a hostile work environment, a sexually hostile work environment and denied her a promotion to Recreation Supervisor, based on her sex, female and pregnancy, in violation of Title VII.

Examination of the evidence shows that Charging Party was subjected to unwelcome comments and conduct by a male Department Manager. The comments and conduct were based on Charging Party's sex, female and pregnancy, and were sufficiently severe or pervasive to alter her working conditions and create a hostile work environment. Respondent is liable for the harassment and sexual harassment of Charging Party as it knew or should have known about the conduct and failed to take reasonable care to prevent and promptly correct the behavior. In the alternative, liability may be imputed to Respondent because the harassment was perpetrated by an individual with direct or successively higher authority over Charging Party, and Respondent cannot establish an affirmative defense to liability. The evidence shows the Department Head

Letter of Determination
EEOC Charge Number: 438-2018-00066
Page 2

was aware of the Department Manager's behavior but failed to take action to correct it. The evidence further shows that Charging Party complained about the difference in treatment to Human Resources when she complained that 'boys; were given preferential treatment as compared to 'girls.' No evidence was provided to show Respondent took any action to remedy the situation after Charging Party's complaint. The evidence shows Charging Party was denied a promotion to Recreation Supervisor by the same individuals who were aware of and condoned the hostile work environment. Accordingly, there is reasonable cause to conclude Respondent violated Title VII.

Upon finding that a violation has occurred, the Commission attempts to eliminate the alleged unlawful practices by informal methods of conciliation. Therefore, the Commission now invites the parties to join with it in reaching a just resolution of the matter. The confidentiality provisions of Sections 706 and 709 of Title VII and Commission Regulations apply to information obtained during conciliation.

If Respondent declines to discuss settlement or when, for any other reason, a settlement acceptable to the Office Director is not obtained, the Director will inform the parties and advise them of the court enforcement alternatives available to aggrieved persons and the Commission. A Commission representative will contact each party in the near future to begin conciliation.

You are reminded that Federal law prohibits retaliation against persons who have exercised their right to inquire or complain about matters they believe may violate the law. Discrimination against persons who have cooperated in Commission investigations is also prohibited. These protections apply regardless of the Commission's determination on the merits of the charge.

On Behalf of the Commission:

JUL 1 8 2019

_____
Date

_____
Daron L. Calhoun, Director
Richmond Local Office

# EXHIBIT C

EEOC Form 161-A (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE
*(CONCILIATION FAILURE)*

| To: | Ashley J. Adams<br>99 North Street<br>Methuen, MA 01844 | From: | Richmond Local Office<br>400 North 8th Street<br>Suite 350<br>Richmond, VA 23219 |
|---|---|---|---|

☐ *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 438-2018-00066 | Vickki Y. Sumlin,<br>Investigator | (804) 771-2148 |

### TO THE PERSON AGGRIEVED:

This notice concludes the EEOC's processing of the above-numbered charge.  The EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief for you.  In addition, the EEOC has decided that it will not bring suit against the Respondent at this time based on this charge and will close its file in this case.  This does not mean that the EEOC is certifying that the Respondent is in compliance with the law, or that the EEOC will not sue the Respondent later or intervene later in your lawsuit if you decide to sue on your own behalf.

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit must be filed **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):**  EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

Daron L. Calhoun

On behalf of the Commission

Digitally signed by Daron L Calhoun
DN: cn=Daron L Calhoun, oo=Equal
Employment Opportunity Commission,
ou=Richmond Local Office,
email=daron.calhoun@eeoc.gov, c=US
Date: 2020.09.29 12:49:34 -04'00'

September 29, 2020

Enclosures(s)

Daron L. Calhoun,
Director

*(Date Mailed)*

cc:
Thomas Miller
Attorney
ROCKINGHAM COUNTY
Human Resources
20 E. Gay St.
Rockingham, VA 22802

Joanne Dekker
THE SPIGGLE LAW FIRM
4830 31st St. South, Suite A
Arlington, VA 22206

Enclosure with EEOC
Form 181-A (11/16)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law.</u>*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS**    --  **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge <u>**within 90 days**</u> of the date you *receive* this Notice. Therefore, you should keep a record of this date. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *mailed* **to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS**    --  **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred <u>more than **2 years (3 years)**</u> before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit <u>before 7/1/10</u> – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION**    --  **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE**    --  **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice.** (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Ashley J. Adams<br>99 North Street<br>Methuen, MA 01844 | From: | Richmond Local Office<br>400 North 8th Street<br>Suite 350<br>Richmond, VA 23219 |
|---|---|---|---|

| | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 438-2018-00066 | Vickki Y. Sumlin,<br>Investigator | (804) 771-2148 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA must be filed in a federal or state court **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court **WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

**Vickki Sumlin**
Digitally signed by Vickki Sumlin
DN: cn=Vickki Sumlin, o=EEOC,
ou=EEOC Richmond Local Office,
email=vickki.sumlin@eeoc.gov, c=US
Date: 2020.09.29 07:45:47 -04'00'

For

**Daron L. Calhoun,**
**Director**

September 29, 2020

*(Date Mailed)*

Enclosures(s)

cc:
| Thomas Miller<br>Rockingham County Administration Center<br>20 East Gay Street<br>Harrisonburg, VA 22803 | Joanne Dekker<br>THE SPIGGLE LAW FIRM<br>4830 31st St. South, Suite A<br>Arlington, VA 22206 |
|---|---|

Enclosure with EEOC
Form 161-B (11/16)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge <u>within 90 days</u> of the date you *receive* this Notice. Therefore, you should keep a record of this date. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred more than <u>2 years (3 years)</u> before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit <u>before 7/1/10</u> – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice.** (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

# COVER SHEET FOR FILING CIVIL ACTIONS
COMMONWEALTH OF VIRGINIA

Case No. ........................................................
                                                                    (CLERK'S OFFICE USE ONLY)

................ Rockingham County ................ ........................ Circuit Court

...... Ashley Adams ...... v./In re: ...... Rockingham County ......
PLAINTIFF(S)                                         DEFENDANT(S)

I, the undersigned [ ] plaintiff [ ] defendant [x] attorney for [x] plaintiff [ ] defendant hereby notify the Clerk of Court that I am filing the following civil action. (Please indicate by checking box that most closely identifies the claim being asserted or relief sought.)

## GENERAL CIVIL
**Subsequent Actions**
- [ ] Claim Impleading Third Party Defendant
  - [ ] Monetary Damages
  - [ ] No Monetary Damages
- [ ] Counterclaim
  - [ ] Monetary Damages
  - [ ] No Monetary Damages
- [ ] Cross Claim
- [ ] Interpleader
- [ ] Reinstatement (other than divorce or driving privileges)
- [ ] Removal of Case to Federal Court

**Business & Contract**
- [ ] Attachment
- [ ] Confessed Judgment
- [ ] Contract Action
- [ ] Contract Specific Performance
- [ ] Detinue
- [ ] Garnishment

**Property**
- [ ] Annexation
- [ ] Condemnation
- [ ] Ejectment
- [ ] Encumber/Sell Real Estate
- [ ] Enforce Vendor's Lien
- [ ] Escheatment
- [ ] Establish Boundaries
- [ ] Landlord/Tenant
  - [ ] Unlawful Detainer
- [ ] Mechanics Lien
- [ ] Partition
- [ ] Quiet Title
- [ ] Termination of Mineral Rights

**Tort**
- [ ] Asbestos Litigation
- [ ] Compromise Settlement
- [ ] Intentional Tort
- [ ] Medical Malpractice
- [ ] Motor Vehicle Tort
- [ ] Product Liability
- [ ] Wrongful Death
- [x] Other General Tort Liability

## ADMINISTRATIVE LAW
- [ ] Appeal/Judicial Review of Decision of (select one)
  - [ ] ABC Board
  - [ ] Board of Zoning
  - [ ] Compensation Board
  - [ ] DMV License Suspension
  - [ ] Employee Grievance Decision
  - [ ] Employment Commission
  - [ ] Local Government
  - [ ] Marine Resources Commission
  - [ ] School Board
  - [ ] Voter Registration
  - [ ] Other Administrative Appeal

## DOMESTIC/FAMILY
- [ ] Adoption
  - [ ] Adoption – Foreign
- [ ] Adult Protection
- [ ] Annulment
  - [ ] Annulment – Counterclaim/Responsive Pleading
- [ ] Child Abuse and Neglect – Unfounded Complaint
- [ ] Civil Contempt
- [ ] Divorce (select one)
  - [ ] Complaint – Contested*
  - [ ] Complaint – Uncontested*
  - [ ] Counterclaim/Responsive Pleading
  - [ ] Reinstatement – Custody/Visitation/Support/Equitable Distribution
- [ ] Separate Maintenance
  - [ ] Separate Maintenance Counterclaim

## WRITS
- [ ] Certiorari
- [ ] Habeas Corpus
- [ ] Mandamus
- [ ] Prohibition
- [ ] Quo Warranto

## PROBATE/WILLS AND TRUSTS
- [ ] Accounting
- [ ] Aid and Guidance
- [ ] Appointment (select one)
  - [ ] Guardian/Conservator
  - [ ] Standby Guardian/Conservator
  - [ ] Custodian/Successor Custodian (UTMA)
- [ ] Trust (select one)
  - [ ] Impress/Declare/Create
  - [ ] Reformation
- [ ] Will (select one)
  - [ ] Construe
  - [ ] Contested

## MISCELLANEOUS
- [ ] Amend Death Certificate
- [ ] Appointment (select one)
  - [ ] Church Trustee
  - [ ] Conservator of Peace
  - [ ] Marriage Celebrant
- [ ] Approval of Transfer of Structured Settlement
- [ ] Bond Forfeiture Appeal
- [ ] Declaratory Judgment
- [ ] Declare Death
- [ ] Driving Privileges (select one)
  - [ ] Reinstatement pursuant to § 46.2-427
  - [ ] Restoration – Habitual Offender or 3rd Offense
- [ ] Expungement
- [ ] Firearms Rights – Restoration
- [ ] Forfeiture of Property or Money
- [ ] Freedom of Information
- [ ] Injunction
- [ ] Interdiction
- [ ] Interrogatory
- [ ] Judgment Lien-Bill to Enforce
- [ ] Law Enforcement/Public Official Petition
- [ ] Name Change
- [ ] Referendum Elections
- [ ] Sever Order
- [ ] Taxes (select one)
  - [ ] Correct Erroneous State/Local
  - [ ] Delinquent
- [ ] Vehicle Confiscation
- [ ] Voting Rights – Restoration
- [x] Other (please specify)

  Employment Discrimination Preg/Sex

[ ] Damages in the amount of $ ........................................................ are claimed.

.......... 12/22/2020 ..........
DATE

[ ] PLAINTIFF   [ ] DEFENDANT   [x] ATTORNEY FOR   [x] PLAINTIFF
                                                  [ ] DEFENDANT

...... Joanne Dekker ......
PRINT NAME

...... 4830 A 31st Street South, Arlington, VA 22206 ......
ADDRESS/TELEPHONE NUMBER OF SIGNATOR

Phone: (703) 215-1123 Ext. 1; Facsimile: (202) 517-9179

...... jdekker@spigglelaw.com ......
EMAIL ADDRESS OF SIGNATOR (OPTIONAL)

FORM CC-1416 (MASTER) PAGE ONE 07/16

*"Contested" divorce means any of the following matters are in dispute: grounds of divorce, spousal support and maintenance, child custody and/or visitation, child support, property distribution or debt allocation. An "Uncontested" divorce is filed on no fault grounds and none of the above issues are in dispute.

# Civil Action Type Codes
## (Clerk's Office Use Only)

Accounting ........................................................ ACCT
Adoption .......................................................... ADOP
Adoption – Foreign ........................................... FORA
Adult Protection ............................................... PROT
Aid and Guidance ............................................. AID
Amend Death Certificate .................................. ADC
Annexation ....................................................... ANEX
Annulment ........................................................ ANUL
Annulment – Counterclaim/Responsive Pleading .. ACRP
Appeal/Judicial Review
    ABC Board .................................................. ABC
    Board of Zoning ......................................... ZONE
    Compensation Board .................................. ACOM
    DMV License Suspension ........................... JR
    Employment Commission .......................... EMP
    Employment Grievance Decision ............... GRV
    Local Government ...................................... GOVT
    Marine Resources ...................................... MAR
    School Board .............................................. JR
    Voter Registration ..................................... AVOT
    Other Administrative Appeal ..................... AAPL
Appointment
    Conservator of Peace ................................. COP
    Church Trustee ........................................... AOCT
    Custodian/Successor Custodian (UTMA) ..... UTMA
    Guardian/Conservator ............................... APPT
    Marriage Celebrant ................................... ROMC
    Standby Guardian/Conservator ................. STND
Approval of Transfer of Structured Settlement ... SS
Asbestos Litigation ........................................... AL
Attachment ...................................................... ATT
Bond Forfeiture Appeal .................................... BFA
Child Abuse and Neglect – Unfounded Complaint .. CAN
Civil Contempt ................................................. CCON
Claim Impleading Third Party Defendant –
    Monetary Damages/No Monetary Damages ......... CTP
Complaint – (Miscellaneous) ............................ COM
Compromise Settlement .................................... COMP
Condemnation .................................................. COND
Confessed Judgment ......................................... CJ
Contract Action ................................................ CNTR
Contract Specific Performance ......................... PERF
Counterclaim – Monetary Damages/No Monetary
    Damages .................................................... CC
Cross Claim ...................................................... CROS
Declaratory Judgment ....................................... DECL
Declare Death ................................................... DDTH
Detinue ............................................................. DET
Divorce
    Complaint – Contested/Uncontested ......... DIV
    Counterclaim/Responsive Pleading .......... DCRP
    Reinstatement – Custody/Visitation/Support/
    Equitable Distribution .............................. CVS
Driving Privileges
    Reinstatement pursuant to § 46.2-427 ...... DRIV
    Restoration – Habitual Offender or
    3rd Offense ................................................ REST

Ejectment ......................................................... EJET
Encumber/Sell Real Estate ............................... RE
Enforce Vendor's Lien ...................................... VEND
Escheatment ..................................................... ESC
Establish Boundaries ........................................ ESTB
Expungement .................................................... XPUN
Forfeiture of Property or Money ...................... FORF
Freedom of Information .................................... FOI
Garnishment ..................................................... GARN
Injunction ........................................................ INJ
Intentional Tort ................................................ ITOR
Interdiction ...................................................... INTD
Interpleader ...................................................... INTP
Interrogatory .................................................... INTR
Judgment Lien – Bill to Enforce ...................... LIEN
Landlord/Tenant ............................................... LT
Law Enforcement/Public Official Petition ........ LEP
Mechanics Lien ................................................ MECH
Medical Malpractice ........................................ MED
Motor Vehicle Tort ........................................... MV
Name Change .................................................... NC
Other General Tort Liability ............................. GTOR
Partition ........................................................... PART
Permit, Unconstitutional Grant/Denial by Locality LUC
Petition – (Miscellaneous) ............................... PET
Product Liability .............................................. PROD
Quiet Title ........................................................ QT
Referendum Elections ...................................... ELEC
Reinstatement (Other than divorce or driving
    privileges) ................................................. REIN
Removal of Case to Federal Court .................... REM
Restore Firearms Rights – Felony .................... RFRF
Restore Firearms Rights – Review .................... RFRR
Separate Maintenance ...................................... SEP
Separate Maintenance – Counterclaim/Responsive
    Pleading .................................................... SCRP
Sever Order ...................................................... SEVR
Sex Change ....................................................... COS
Taxes
    Correct Erroneous State/Local ................. CTAX
    Delinquent ................................................. DTAX
Termination of Mineral Rights ......................... MIN
Trust – Impress/Declare/Create ........................ TRST
Trust – Reformation ......................................... REFT
Uniform Foreign Country Money Judgments ..... RFCJ
Unlawful Detainer ............................................ UD
Vehicle Confiscation ........................................ VEH
Voting Rights – Restoration .............................. VOTE
Will Construction ............................................. CNST
Will Contested ................................................. WILL
Writs
    Certiorari .................................................. WC
    Habeas Corpus ........................................... WHC
    Mandamus ................................................. WM
    Prohibition ................................................. WP
    Quo Warranto ............................................ WQW
Wrongful Death ................................................ WD